## Hummel et al. *v.* Tyner.

FRAUD.—*Answer.*—In an action on an executory contract, to recover the contract price, an answer alleging facts amounting, in substance, to a fraudulent trick or contrivance whereby the defendant's signature was obtained, and also alleging a repudiation of the contract by the defendant before the plaintiff had been put to any expense, is sufficient on demurrer.

INSTRUCTION.—*Harmless Error.*—A party can not complain of an instruction which, though not strictly applicable to the evidence, yet, taken as a whole, does him no injustice.

From the Rush Circuit Court.

*L. Sexton*, *C. Cambern* and *J. W. Study*, for appellants.

*G. C. Clark*, *W. A. Cullen* and *B. L. Smith*, for appellee.

Niblack, J.—This was an action by Joseph F. Hummel and Frank H. Cardoni, residents of Piqua, Ohio, and proprietors of the Ohio Marble Works, against Julia A. Tyner, widow of William Tyner, for a failure on her part to comply with an alleged contract for the erection of a monument at the grave of her late husband.

The defendant answered:

1.  In general denial;

2.  That in February, 1877, soon after her husband had died, one Hemsteger, then also a resident of Piqua, Ohio, and a gentleman with whom she had had some previous acquaintance, came to her house to board, representing himself to be a student in theology, and expressing great sympathy with her religious views and convictions, and with the sad condition in which she was left; that the said Hemsteger also represented to her that the estate which she had inherited from her late husband would amount to as much as thirty thousand dollars, and that she ought, as a testimonial of her affection for her husband, to erect a suitable monument at his grave; that at that time she was young and inexperienced in business, and was particularly unacquainted with the value, character and qualities of articles manufactured from marble, and was in such great mental distress as to be incapable of deciding any thing of importance to her interests; that, after Hemsteger had remained at her house near a week, he left, under the pretence that he was going to Richmond, in this State, but returned in a few days in company with Hummel, one of the plaintiffs; that Hummel had with him a design for a monument, which he represented as a suitable one for her to have erected, and which he claimed would be fairly worth three thousand dollars when erected;

that said Hummel further represented that such a monument would cost him about twenty-five hundred dollars, and that he would put it up for her for the latter sum, so as thereby to advertise his business at Rushville, where she resided; that he would make a contract with her to put up the monument for three thousand dollars, and would then credit her with five hundred dollars, as so much money paid by her, without requiring her to pay any thing, so as to make the impression upon other persons that he was getting three thousand dollars for the monument; that she informed both Hummel and Hemsteger that she was not then ready or willing to enter into any contract about a monument, and refused to sign any such contract; that she was not sure of her ability to pay for such a monument, and that she desired first to consult her brother-in-law, one Joseph W. Greenan, likewise a resident of Piqua, Ohio, before making any arrangement concerning a monument; that thereupon the said Hummel falsely and fraudulently told her, that, if she would sign her name to a contract which he had already prepared, he would take it and the design for the proposed monument home with him, and show them both to Greenan, and if he, Greenan, did not approve the proposed contract, it should be no contract, but only as so much blank paper; that, relying upon these representations, she signed the alleged contract, which was the same sued on; that, soon after his return home, Hummel showed the contract and design to Greenan, who refused to approve the same, and notified the plaintiffs not to attempt to execute the contract on their part; that, soon afterward, and before they had expended any money or labor on the monument, she, the defendant, gave the plaintiffs notice in writing, that she repudiated the alleged contract, and would not be bound by it; that Hemsteger was not, at the time he came to the defendant's

house to board, a student in theology, but was an agent for the plaintiffs, a fact wholly unknown to her; that the representations of Hemsteger, as to the value of her late husband's estate, were false, and known by him to be so, and not made upon any reliable information; that the representations of Hummel, that the proposed monument would cost him twenty-five hundred dollars, were false and fraudulent, and were known to be so by him when he made them; and that the actual cost of such monument would not have exceeded twelve hundred dollars. Wherefore the defendant averred that her signature was obtained to the contract sued on by fraud and misrepresentation.

The plaintiffs demurred to the second paragraph of the answer, but their demurrer was overruled, and they replied in general denial. A jury returned a verdict for the defendant; and, a new trial being refused, judgment was rendered in her favor on the verdict.

Error is assigned upon the overruling of the demurrer to the second paragraph of the answer, and upon the refusal of the court to grant a new trial.

The appellants insist that the following propositions are well settled:

1st. That a representation, to be fraudulent, must be in regard to a material fact, and not a mere expression of an opinion as to the quality or value of an article, and must be a representation upon which the party had a right to rely, and did rely.

2d. That every one is bound to know the law, and is presumed to understand the contents of any writing which he signs, and no one has the right to rely on the statements of the other party as to the legal effect of such writing.

3d. That fraud can only be predicated upon an existing, or alleged existing, fact, and not upon a promise to do

something in the future, and that, applying these propo-
sitions to the second paragraph of the answer, it was
clearly bad.

But, waiving all discussion of these propositions as ab-
stract questions of law, we are of opinion that none of
them are fairly applicable to the paragraph of answer in
question. We construe that paragraph to allege a series
of facts amounting, in substance and in effect, to a
charge that Mrs. Tyner's signature to the contract in
suit was obtained by a fraudulent trick or contrivance;
and, thus, construing it, we think it was correctly held
good on demurrer.

On the trial, the court, on its own motion, gave a series
of instructions in writing. The sixth instruction, the only
one complained of by the appellants, was as follows :

"It is the duty of every one making a trade to exam-
ine into the matter for himself or herself, and if he or
she has the opportunity of so doing and does not do it,
unless there is fraud in the transaction, he or she must
bear the consequences. Every one is entitled to the ad-
vantage of a good trade fairly made, and, if you find that
the contract in suit was broken without sufficient cause
by the defendant, the plaintiffs' damages will be the dif-
ference between the contract price of the work to be done
and the reasonable cost of the work at the usual and ordi-
nary price."

. The appellants object to the qualifying words. "unless
there is fraud in the transaction," contained in this instruc-
tion, for the alleged reason that there was no sufficient
evidence of fraud to which such qualifying words were
applicable.

There may be some question as to whether the greater
portion of this instruction was strictly applicable to the
matters really in issue between the parties, but, however
that may have been, we see nothing in the instruction,

taken as a whole, which can be construed into an injustice to the appellants. On the contrary, the apparent assumption that there was a subsisting contract between the parties would seem to have been favorable to the theory upon which the appellants tried the cause.

The appellants asked for some instructions which the court refused to give, and upon which exceptions were reserved, but no argument has been submitted in this court in support of those instructions. Hence, whatever error there may have been, if any, in the refusal of the court to give the instructions asked for, has been waived by not being specifically pointed out.

A question is also made upon the sufficiency of the evidence to sustain the verdict, but that involves an inquiry into the apparent weight of the evidence, a question into which we are not required to enter. There appears to us to have been evidence fairly tending to sustain the verdict, and in that view we are not at liberty to disturb the verdict upon the evidence.

The judgment is affirmed, at the costs of the appellants.